IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No.  04-CV-01382-ZLW-KLM

KENNETH E. PEPER,

      Plaintiff,

v.

DEPARTMENT OF AGRICULTURE OF THE UNITED STATES OF AMERICA,
MIKE JOHANS, SECRETARY IN HIS OFFICIAL CAPACITY,
FOREST SERVICE OF THE UNITED STATES OF AMERICA, and
DALE BOSWORTH, AS CHIEF IN HIS OFFICIAL CAPACITY,

      Defendants.

_____

### RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE
_____

**ENTERED BY MAGISTRATE JUDGE KRISTEN  L. MIX**

This matter is before the Court pursuant to 28 U.S.C. § 636(b)(1)(A), D.C.COLO.LCivR 72.1C., and Senior District Judge Zita L. Weinshienk's Special Order of Reference [Docket No. 109; Entered November 5, 2010] for consideration of Plaintiff's **Second Amended Complaint for Quiet Title[,] Declaratory Relief[,] and Injunctive Relief** [Docket No. 51; Filed September 12, 2007] (the "Second Amended Complaint"). On February 25, 2008, Defendants filed an Answer [Docket No. 63] (the "Answer"). On June 26, 2008, Plaintiff, who is proceeding *pro se*, filed a Legal Brief [Docket No. 94] (the "Brief") regarding the Administrative Record [Docket Nos. 77 and 78] (the "A.R.") filed by Defendants on April 29, 2008. On July 23, 2008, Defendants filed a Response [Docket No. 99] (the "Response") to Plaintiff's Brief. On August 8, 2008, Plaintiff filed a Reply Brief [Docket No. 102] (the "Reply"). The Court has reviewed the pleadings, the Administrative

1

Record, the entire case file, and the applicable law and is sufficiently advised in the premises.  For the reasons set forth below, the Court respectfully **RECOMMENDS** that this case be **REMANDED** to the United States Forest Service for further administrative proceedings.

## I.  Summary of the Case

Plaintiff is the owner of a patented mining claim known as the May Queen Lode that is surrounded by the Arapaho and Roosevelt National Forests.  *Second Amended Complaint* [#51] at 1, ¶1; *Answer* [#63] at 2, ¶1.  On November 12, 2001, Plaintiff submitted an Application for Transportation and Utility Systems and Facilities on Federal Lands (the "Application") to the United States Forest Service ("USFS") pursuant to 36 C.F.R. § 251.54. A.R. 4-9.[1]  Plaintiff's Application requested a "formalized easement" granting him access across National Forest land to reach the May Queen Lode.  *Response* [#99] at 12 (citing A.R. at 3-9 and 2669).  On January 29, 2002, USFS "notified [Plaintiff] that his [Application] would be formally accepted as an application for special use authorization once he formed a Home or Landowners Association ('HOA') and resubmitted a modified application."[2]  *Id.* (citing A.R. at 11-12 and 2669).  On April 28, 2003, Plaintiff informed USFS that he had formed an HOA,  the Middle Boulder Creek Road Association.  *Id.* at 13 (citing A.R. at 32 and 2669).  On June 18, 2003, USFS informed Plaintiff that "due to staffing issues and the backlog on special use permits and easements, he could expect to receive the special use

_____

[1] References to the Administrative Record ("A.R.") are by page number.

[2]  A special use authorization is "a permit, term permit, lease, or easement which allows occupancy, use, rights, or privileges of National Forest System land."  36 C.F.R. § 251.51.  "Inholders who require surface-disturbing access or use greater than that afforded the general public must 'apply for and receive a special-use or road-use authorization.'" *Adams v. United States (Adams II)*, 255 F.3d 787, 793 (9th Cir. 2001) (quoting 36 C.F.R. § 251.110(d)).

authorization in two to four years."  *Id.* (citing A.R. at 34 and 2669).

Plaintiff was dissatisfied with the speed of USFS's handling of his Application, and, on July 7, 2004, he filed a Complaint [Docket No. 1] (the "Complaint") in which he asserted a quiet title action pursuant to 28 U.S.C. § 2409a to secure his alleged title to an easement allowing access to the May Queen Lode.  Plaintiff alleged three "alternate sources" of his title to an easement:  (1) the common law theory of easement by necessity; (2) "Revised Statute 2477";[3] and (3) the Alaska National Interest Land Conservation Act (ANILCA), 16 U.S.C. § 3210.  *Complaint* [#1] at 2-3.  On October 7, 2004, Defendants responded to the Complaint with a Motion to Dismiss for Lack of Subject Matter Jurisdiction and Failure to State a Claim [Docket No. 6] (the "Motion to Dismiss").  On September 5, 2006, the Court granted in part Defendants' Motion to Dismiss and dismissed with prejudice Plaintiff's "claim under [Revised Statute] 2477 and his claim of an easement by necessity."  *Order* [Docket No. 28] at 5.[4]  The Court did not dismiss Plaintiff's claim that he was entitled to an easement under ANILCA.  *Id.*  The Court also ordered that "on or before December 1, 2006, Defendants shall complete and conclude the administrative process concerning Plaintiff's [Application] for a special use authorization and provide notice to the Court that the process is completed, unless good cause is shown for an extension of time."  *Id.*

---

[3] Revised Statute 2477 was previously codified at 43 U.S.C. § 932, but was repealed by the Federal Land Policy and Management Act (FLPMA), 43. U.S.C. §§ 1701-82 (1976).  However, the FLPMA preserved all Revised Statute 2477 rights-of-way perfected as of October 21, 1976.  *See* Pub. L. 94579, Section 701(a), 90 Stat. 2744, 2793 (1976); *see also So. Utah Wilderness v. Bureau of Land Mgmt.*, 425 F.3d 735, 740 (10th Cir. 2005) (discussing history of Revised Statute 2477).

[4] Senior District Judge Weinshienk's Order [#28] was based on the conclusion that Plaintiff could not properly bring a quiet title action against Defendants.  *Order* [#28] at 3 ("Plaintiff's interest in the road under R.S. 2477 is not the type of interest that permits a suit to quiet title[.]"); *id.* at 3-4 (explaining that an action to quiet title to an easement by necessity cannot be brought against the United States).  Nothing in the Order, or in applicable precedent, abrogated USFS's responsibility to properly follow its own regulations when considering Plaintiff's Application, as discussed in detail *infra* in Part II.B(ii) of this Recommendation.

On November 29, 2006, Defendants filed a Motion for an Extension of Time with Respect to the December 1, 2006, Deadline Set by the Court [Docket No. 34] (the "Motion for Extension").   On December 6, 2006, the Court granted the Motion for Extension and ordered Defendants to complete and conclude the administrative process by May 15, 2007. *Order* [Docket No. 35].

On May 15, 2007, Defendants filed a Notification that the Administrative Process is Complete and Request that Plaintiff's Remaining Claim be Dismissed [Docket No. 37] (the "Notification").   In the Notification, Defendants represented that USFS had "concluded its administrative process concerning Plaintiff's [Application for] special use authorization in compliance with the Court's Orders dated September 5, 2006, and December 6, 2006." *Notification* [#37] at 5; *see Order* [#35]; *Order* [#28].   Defendants explained as follows:

> On May 8, 2007, Forest Supervisor Glenn P. Casamassa signed a Decision Memo approving the issuance of special use authorizations to the Middle Boulder Creek Road Association authorizing access to privately owned property (the "Property").   Access to the Property will be via two Forest Land Policy and Management Act ("FLPMA") [43 U.S.C. §§ 1701-82] easements: (1) a Forest Road Easement; and (2) a Private Road Easement (the "Easements")[.] . . .
>
> Prior to any motorized use of the Private Road Easement, construction of an armored ford across the North Fork of Middle Boulder Creek, construction of a bridge with a gate across the South Fork of Middle Boulder Creek, and construction/reconstruction of the road [is required].   All construction/reconstruction and maintenance shall be the responsibility of the holder of the Easements.   The Easements will allow for motorized access to the Property, except during the winter months.
>
> On May 14, 2007, the Forest Service sent [Plaintiff] a cover letter and two separate FLPMA easement packages for his signature.   Once [Plaintiff] has submitted the executed easement documents along with his payment of the land use fees associated with the Easements, $241.08 for 2007, the Forest Supervisor for the Arapaho and Roosevelt National Forests and Pawnee National Grassland will authorize his use of the Easements.

4

*Id.* at 5-6 (citing *Decision Memo* [Docket No. 37-1]); *see* A.R. 319 and 69-108.  Because USFS completed its administrative process in compliance with the Court's Orders [#28 and 35] and because Plaintiff was granted two FLPMA Easements [Docket No. 37-2], Defendants requested that the Court dismiss Plaintiff's sole remaining claim asserted in the Complaint [#1], which requested an easement pursuant to ANILCA.  *Id.* at 6-7.

On July 20, 2007, the Court granted Defendants' request that Plaintiff's remaining claim be dismissed.  *Order* [Docket No. 47].  The Court also ordered that "Plaintiff may file an Amended Complaint on or before September 18, 2007, setting forth a claim for review of the agency decision under the Administrative Procedure Act (APA)," 5 U.S.C. §§ 701-706, "which shall then be the only claim at issue in this case."  *Id.* at 2.  In accordance with this Order, Plaintiff filed the Second Amended Complaint [#51] now before the Court.

When considering Plaintiff's Second Amended Complaint, the Court is mindful that it must construe the filings of a *pro se* litigant liberally.  *See Haines v. Kerner*, 404 U.S. 594, 520-21 (1972); *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991).  However, the Court should not be the *pro se* litigant's advocate, nor should the Court "supply additional factual allegations to round out [the *pro se* litigant's] complaint or construct a legal theory on [his or her] behalf."  *Whitney v. New Mexico*, 113 F.3d 1170, 1173-74 (10th Cir. 1997) (citing *Hall*, 935 F.2d at 1110).  In addition, *pro se* litigants must follow the same procedural rules that govern other litigants.  *Nielson v. Price*, 17 F.3d 1276, 1277 (10th Cir. 1994).

## II.  Analysis

Plaintiff's Second Amended Complaint asserts two claims: (1) a claim under 28 U.S.C. § 2409a seeking to quiet Plaintiff's alleged title to an easement allowing access to

5

the May Queen Lode; and (2) a claim under 5 U.S.C. § 706 seeking remand of USFS's decision to grant Plaintiff two FLPMA Easements. *Second Amended Complaint* [#51] at 6-7. The Court considers each claim in turn.

### A. Plaintiff's Quiet Title Claim

Plaintiff seeks a judgment pursuant to 28 U.S.C. § 2409a "specifically defining and quieting [his] title to [an] easement" allowing access to the May Queen Lode. *Id.* at 9. Plaintiff alleges four "alternate sources" of his purported title to the easement: (1) "Common Law Easement of Necessity"; (2) "Statutory Easement By Prescription under State Law"; (3) "Statutory Public Road Easement under Revised Statute 2477"; and (4) "Statutory easement" under ANILCA, 16 U.S.C. § 3210. *Id.* at 6, ¶19.

The instant quiet title claim differs from the quiet title claim brought by Plaintiff in his original Complaint [#1] in only one respect: it alleges one new "source" of Plaintiff's purported title to an easement, i.e., "Statutory Easement By Prescription under State Law." To the extent that Plaintiff's instant quiet title claim is the same as his original quiet title claim, it is barred. *See Chevron Corp. v. Stratus Consulting, Inc.*, No. 10-cv-00047-MSK-MEH, 2010 WL 3923092, at *11 (D. Colo. Oct. 1, 2010) (unpublished decision) ("[T]he law of the case doctrine generally 'dictates that prior judicial decisions on rules of law govern the same issues in subsequent phases of the same case.'" (quoting *Been v. O.K. Indus., Inc.*, 495 F.3d 1217, 1224 (10th Cir. 2007)); *see also Mitchell v. KDJM-FM Jammin 92.5*, No. 10-cv-01732-BNB, 2010 WL 3210766, at *1 (D. Colo. Aug. 10, 2010) (unpublished decision) ("Dismissal of a plaintiff's claim, with prejudice, bars a second suit by the same plaintiff on the same claim in the same court." (citing *Semtek Int'l, Inc. v. Lockheed Martin Corp.*, 531 U.S. 497, 505-06 (2001); *Griffin v. Gash*, 317 F. App'x 782 (10th Cir. 2009))).

6

The Court has entered judgment against Plaintiff on his original claim under 28 U.S.C. § 2409a, which sought to quiet title to an alleged easement bestowed by a common law easement by necessity theory, Revised Statute 2477, or ANILCA, 16 U.S.C. § 3210. *Order* [Docket No. 59] at 4 ("It is FURTHER ORDERED that judgment is entered pursuant to Fed. R. Civ. P. 54(b) in favor of Defendants and against Plaintiff on the three original claims in Plaintiff's Complaint [#1] which were dismissed on September 6, 2006 and July 19, 2007."); *see Order* [#28] at 5 ("Plaintiff's claim under [Revised Statute] 2477 and his claim of an easement by necessity are dismissed with prejudice."); *Order* [#47] at 2 ("Plaintiff's claim under the Alaskan National Interest Land Conservation Act (ANILCA) is dismissed."). Accordingly, the Court recommends that Plaintiff's instant 28 U.S.C. § 2409a claim seeking to quiet title to an easement created pursuant to the common law easement by necessity theory, Revised Statute 2477, or ANILCA, 16 U.S.C. § 3210, be dismissed with prejudice.

Turning to Plaintiff's sole new basis for relief under 28 U.S.C. § 2409a, i.e., the claim that he has title to a "Statutory Easement By Prescription under State Law," the Court finds that Plaintiff has not been granted leave to assert such a claim. As discussed *supra* in Part I of this Recommendation, Senior District Judge Weinshienk granted Plaintiff leave to file an Amended Complaint "setting forth a claim for review of the agency decision under the Administrative Procedure Act (APA)," 5 U.S.C. §§ 701-706, "which shall then be the *only* claim at issue in this case." *Order* [#47] at 2 (emphasis added). Senior Judge Weinshienk's Order [#47] thus granted Plaintiff leave to assert just one cause of action – an action under the APA – in his Second Amended Complaint. Plaintiff was *not* granted leave to assert a new claim under 28 U.S.C. § 2409a. Accordingly, Plaintiff's assertion of

7

a new claim under 28 U.S.C. § 2409a is outside of the scope of his leave to amend.  *See* Fed. R. Civ. P. 15(a)(2) (stating that a party may amend its pleading only "with the opposing party's written consent or the court's leave").

Moreover, Senior Judge Weinshienk has made it clear that any non-APA claims asserted in Plaintiff's Second Amended Complaint [#51] are barred and are not to be further considered by the Court.  In her Order [#59] of February 14, 2008, Senior Judge Weinshienk expressly stated that Plaintiff's "Administrative Procedure Act (APA) claim . . . is [his] sole remaining claim in this case."  On August 6, 2008, Senior Judge Weinshienk reiterated the point: "This Court . . . stress[es] that the **APA claim is the sole remaining claim in this case, and further argument regarding either a quiet title action or the existence of an easement will not be permitted.  These matters have been resolved and are no longer the subject of this case.**"  *Order* [Docket No. 101] at 2 (emphasis original); *see also Order* [Docket No. 95] at 5 ("In light of the numerous occasions on which the Court has stated that Plaintiff's sole remaining claim for relief is his APA claim, and the clear and unequivocal orders entered by this Court and Senior Judge Weinshienk on this issue, the Court simply refuses to spend any more time on this issue.").  The Court therefore concludes that Plaintiff's claim under 28 U.S.C. § 2409a that he has title to a "Statutory Easement By Prescription under State Law" is barred.  Accordingly, the Court recommends that the claim be dismissed with prejudice.

### B.  Plaintiff's Administrative Procedure Act Claim

Pursuant to  5 U.S.C. § 706, Plaintiff seeks remand of USFS's decision to grant him two FLPMA Easements on May 14, 2007.  *See Second Amended Complaint* [#51] at 7-8.

Plaintiff contends that the decision should be remanded because it was "arbitrary or capricious or an abuse of discretion or otherwise not in accordance with law." *Id.* at 9. Specifically, Plaintiff argues that the decision was unlawful for two reasons: (1) USFS "failed and refused to comply with its own regulation, 36 C.F.R. § 251.114(f)(1)," when making the decision; and (2) the two FLPMA Easements impose "such complex, arbitrary and capricious requirements" on Plaintiff that he will not be able to practically use and enjoy them. *Id.* at 8. The Court considers Plaintiff's arguments in turn.

### (i) Standard of Review

The purpose of a claim under the Administrative Procedure Act (APA) is to allow a person suffering legal wrong because of an agency's decision to obtain judicial review of that decision. 5 U.S.C. § 702. When reviewing an agency's decision, the Court shall "hold unlawful and set aside" the decision or any agency findings or conclusions that are "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A). The Court shall also set aside an agency's decision if it was reached "without observance of procedure required by law." 5 U.S.C. § 706(2)(D). The Court of Appeals for the Tenth Circuit has explained that, pursuant to the APA, "the essential function of judicial review is a determination of (1) whether the agency acted within the scope of its authority, (2) whether the agency complied with prescribed procedures, and (3) whether the [decision] is otherwise arbitrary, capricious or an abuse of discretion." *Olenhouse v. Commodity Credit Corp.*, 42 F.3d 1560, 1573 (10th Cir. 1994) (citations omitted). "Legal principles applicable to the first two determinations are straightforward." *Id.* Determination of whether the agency acted within the scope of its authority requires a delineation of the scope of the agency's authority and discretion, and consideration of

9

whether on the facts, the agency's decision can reasonably be said to be within that scope. *Id.* (citing *Citizens to Preserve Overton Park, Inc. v. Volpe*, 401 U.S. 402, 415-16 (1971), *abrogated on other grounds, Califano v. Sanders*, 403 U.S. 99, 105 (1977)). Determination of whether the agency complied with prescribed procedures requires a plenary review of the record and consideration of applicable law.  *Id.*  Importantly, "'[a]gencies are under an obligation to follow their own regulations, procedures, and precedents, or provide a rational explanation for their departures.'"  *Big Horn Coal Co. v. Temple*, 793 F.2d 1165, 1169 (10th Cir. 1986) (quoting *Nat'l Conservative Political Action Comm. v. FEC*, 626 F.2d 953, 959 (D.C. Cir. 1979)); *accord Brock v. Cathedral Bluffs Shale Oil Co.*, 796 F.2d 533, 536 (D.C. Cir. 1986) ("It is axiomatic that an agency must adhere to its own regulations."); *Sierra Club v. Van Antwerp*, 526 F.3d 1353, 1368 (11th Cir. 2008) ("[A]n agency's failure to follow its own regulations and procedures is arbitrary and capricious.").

With respect to the third essential determination, "[t]he duty of a court reviewing [an] agency [decision] under the 'arbitrary or capricious' standard is to ascertain whether the agency examined the relevant data and articulated a rational connection between the facts found and the decision made."  *Olenhouse*, 42 F.3d at 1573 (citing *Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Ins. Co.*, 463 U.S. 29, 43 (1983)).  The Court must look to the agency's explanation for its decision and determine whether the agency considered all of "the relevant factors and whether there has been a clear error of judgment."  *Overton Park*, 401 U.S. at 416.  An agency's decision will be set aside as arbitrary or capricious "if the agency relied on factors which Congress ha[d] not intended for it to consider, entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before the agency, or is so implausible that it could not be

ascribed to a difference in view or the product of agency expertise." *Motor Vehicle Mfrs.*, 463 U.S. at 43.  This inquiry is meant to be "searching and careful," but "the ultimate standard of review is a narrow one." *Overton Park*, 401 U.S. at 416.  Simply put, the Court "is not empowered to substitute its judgment for that of the agency." *Id.*; *see also Utahns for Better Transp. v. United States Dep't of Transp.*, 305 F.3d 1152, 1164 (10th Cir. 2002) (citing *Fund for Animals, Inc. v. Rice*, 85 F.3d 535, 541 (11th Cir. 1996) ("[T]he APA's arbitrary and capricious standard is a deferential one; administrative determinations may be set aside only for substantial procedural or substantive reasons." )); *Olenhouse*, 42 F.3d at 1573 ("An agency's decision is entitled to a presumption of regularity, 'but that presumption is not to shield [the agency's] action from a thorough, probing, in-depth review.").

"Because the arbitrary and capricious standard focuses on the rationality of an agency's decisionmaking process rather than on the rationality of the actual decision, '[i]t is well-established that an agency's [decision] must be upheld, if at all, on the basis articulated by the agency itself.'" *Olenhouse*, 42 F.3d at 1575 (quoting *Motor Vehicle Mfrs.*, 463 U.S. at 43).  If the agency's explanation for its decision is deficient, "the reviewing court should not attempt itself to make up for [the] deficiencies; it may not supply a reasoned basis for the agency's action that the agency itself has not given." *Motor Vehicle Mfrs.*, 463 U.S. at 43.  Further, the Court must ignore "after-the-fact rationalization by counsel in briefs or argument." *Olenhouse*, 42 F.3d at 1575.  The Court looks only to the agency's explanation of its course of inquiry, its analysis, and its reasoning that is contained in the administrative record. *Id.*; *see also Bar MK Ranches v. Yuetter*, 994 F.2d 735, 739 (10th Cir. 1993) (The Court is limited to reviewing the administrative record of an agency's action

11

or decision, i.e., "all documents and materials directly or indirectly considered by the agency." ); *Camp v. Pitts*, 411 U.S. 138, 142 (1973) ("[T]he focal point for judicial review should be the administrative record already in existence, not some new record made initially in the reviewing court."); *Lewis v. Babbitt*, 998 F.2d 880, 882 (10th Cir. 1993) ("Judicial review . . . is generally based on the administrative record that was before the agency at the time of its decision[.]").  Thus, "the grounds upon which the agency acted must be clearly disclosed in, and sustained by" the administrative record.  *Olenhouse*, 42 F.3d at 1575 (citing *American Petroleum Inst. v. EPA*, 540 F.2d 1023, 1029 (10th Cir. 1976)).  If the agency has failed to provide a reasoned explanation for its decision in the administrative record, the court cannot affirm the decision.  *Id.*  Instead, the Court may set aside the decision, supplement the record, or remand the case to the agency for further proceedings.  *Id.* (citations omitted).

### (ii) USFS Compliance with 36 C.F.R. § 251.114(f)(1)

Plaintiff first contends that USFS did not comply with prescribed procedures for considering his Application.  He argues that 36 C.F.R. § 251.114(f)(1) required USFS to determine whether he had "any existing rights of access by deed or under state or common law" before granting him easements under FLPMA.  *Second Amended Complaint* [#51] at 8.  Plaintiff alleges that USFS "failed and refused" to make this determination.  *Id.*; *Brief* [#94] at 7 ("The Administrative Record contains no pleadings or affidavits from [Defendants] as to [their] compliance with regulation 36 C.F.R. § 251.114(f) prior to the issuance of the Easements[.]").  Accordingly, Plaintiff argues that the decision to grant him FLPMA Easements must be set aside because USFS did not follow the prescribed decisionmaking procedure.

12

Defendants respond that (1) USFS was not required to determine whether Plaintiff "had any common law rights," and (2) even though not required to do so, USFS *did* in fact "examine whether [Plaintiff] had any common law rights" and correctly concluded that he "had no such rights." *Response* [#99] at 57. Defendants argue as follows:

> [36 C.F.R. § 251.114(f)] places a burden on the inholder to demonstrate that routes of access across non-Federal lands are not available. Such a showing is required because "[w]here there is existing access or a right of access to a property over non-National Forest land or over public roads that is adequate or that can be made adequate, there is no obligation to grant additional access through National Forest System lands." 36 C.F.R. § 251.110(g). The regulation does not – as [Plaintiff] contends – require the Forest Service to determine the validity of an applicant's property interests in any purported easements across Forest Service lands as a precondition to issuing a special use permit authorizing access[.]

*Id.* at 56.

36 C.F.R. § 251.114 governs the criteria for the issuance of a special use authorization for access across National Forest lands. Subsection (f)(1) provides as follows: "[T]he authorizing officer, prior to issuing any access authorization, must also ensure that . . . [t]he landowner has demonstrated a lack of any existing rights or routes of access available by deed or under State or common law[.]" The Court of Appeals for the Tenth Circuit has recognized the importance of this regulation: "[A] determination of [a landowner]'s patent or common law rights will play a pivotal role during the permit process the Forest Service seeks to enforce." *United States v. Jenks (Jenks I)*, 22 F.3d 1513, 1518 (10th Cir. 1994) (discussing 36 C.F.R. § 251.114(f)(1)). Further, the Court of Appeals expressly stated that USFS is required to follow the regulation. *Id.* (citing *Bar MK Ranches*, 994 F.2d at 738); *accord Skranak v. Castenada*, 425 F.3d 1213, 1221 (9th Cir. 2005) ("We conclude that the Forest Service must be held to 36 C.F.R. § 251.114(f)'s requirement that

an easement determination be made.  It follows that in refusing to determine whether [the plaintiffs] had easements permitting them access, the Forest Service violated its own regulations.").

Although not clearly articulated by Plaintiff, relevant case authority establishes that failure to follow the requirements of 36 C.F.R. § 251.114(f)(1) when reaching a decision on an application for a special use authorization may be deemed a violation of the APA.  The violation may be characterized as either (1) a failure to comply with proscribed procedures, or (2) a decision that is arbitrary and capricious because the terms and conditions imposed on the applicant's access are unreasonable.  *See United States v. Jenks (Jenks II),* 129 F.3d 1348, 1351 (10th Cir. 1997); *Skranak*, 425 F.3d at 1221 (holding that the Forest Service's failure to determine whether a special use authorization applicant had common law easements violated the APA); *Fitzgerald Living Trust v. United States*, 460 F.3d 1259, 1264 (9th Cir. 2006) (stating that the court will review the provisions of an FLPMA easement to determine whether they are "reasonable" under the APA).  Applicable precedent holds that consideration of a landowner's "deed or common law access rights . . . may affect the terms of [a special use] permit or play a role in the decision to issue a permit." *Jenks I*, 22 F.3d at 1518.  Indeed, the Court of Appeals for the Tenth Circuit has held that pursuant to the regulation, "the government might not legitimately be able to require special use permits if [the landowner] could demonstrate preexisting rights of access." *Jenks II*, 129 F.3d at 1351; *accord United States v. Srnsky*, 271 F.3d 595, 604 (4th Cir. 2001) (stating that 36 C.F.R. §§ 251.114(f) and 251.110(b) "clearly contemplate exemptions for individuals with preexisting access rights").

In this case, Defendants have provided no support for their position that USFS was

14

not required to "examine whether [Plaintiff] had any common law rights" when considering his Application.  *Response* [#99] at 57.  Defendants acknowledge that *Jenks I* requires USFS to abide by 36 C.F.R. § 251.114(f)(1), and they do not present any case law to the contrary.  *Id.* at 56 n.25 ("In *Jenks I*, the Tenth Circuit suggested a construction of [36 C.F.R. § 251.114(f)(1)] similar to that championed by [Plaintiff] in this case, although it stated that it would 'leave it to the Forest Service to interpret this regulation.'" (quoting *Jenks I*, 22 F.3d at 1518)).  USFS has apparently construed the court's statement about the agency's authority to interpret 36 C.F.R. § 251.114(f)(1) as an invitation to ignore the regulation.  However, declining to consider a landowner's common law or state law easement rights is simply not a viable option given the plain language of the regulation.

Defendants have completely failed to justify their position that USFS was not required to determine whether Plaintiff had any "common law rights" when considering his Application.  *Id.* at 57.  Accordingly, the Court rejects Defendants' position and finds that USFS was required to ensure that Plaintiff had "demonstrated a lack of any existing rights or routes of access available by deed or under State or common law" when considering his Application.[5]  36 C.F.R. § 251.114(f)(1).

The Court turns next to Defendants' assertion that USFS did in fact comply with 36 C.F.R. § 251.114(f)(1) during the course of its review of Plaintiff's Application.  *Response*

---

[5] Interestingly, USFS conceded this point in previous litigation in another Circuit.  In *Skranak*, USFS initially argued that it was "not necessary to address whether there may have been some common law right of access to the private property" when considering the plaintiffs' application for a special use authorization.  425 F.3d at 1219.  However, USFS then "put the matter beyond question by conceding at oral argument that 36 C.F.R. § 251.114(f) does indeed require it to make an easement-ownership determination." *Id.*  The Court finds that Defendants in this case have acted unreasonably – and have unnecessarily consumed enormous judicial resources – by providing no explanation for their decision to re-adopt a position that USFS previously abandoned as untenable.

15

[#99] at 57 (citing A.R. 3310-11) ("The Forest Service, while not required to do so, did examine whether [Plaintiff] had any common law rights.  The Forest Service concluded that [Plaintiff] had no such rights.").  Defendants devote several pages of their Response [#99] to explaining why Plaintiff does not have "any existing rights or routes of access available by deed or under State or common law," 36 C.F.R. § 251.114(f)(1). *See, e.g., id.* (asserting that Plaintiff has no "right to access in the form of a common law easement without conditions" as a matter of law).  However, because "after-the-fact rationalization by counsel in briefs or argument" is irrelevant to the Court's review, this discussion is misguided and unhelpful.  *Olenhouse*, 42 F.3d at 1575.  Defendants point to just one document in the Administrative Record as evidence that USFS actually considered whether Plaintiff had any existing rights or routes of access available by deed or under state or common law *during* its administrative review of Plaintiff's Application.  Defendants assert that USFS concluded that Plaintiff had no common law rights of access in a document located at A.R. 3310-11. *Response* [#99] at 57.  The Court has reviewed this document, which is titled "Certificate of Possession" and dated November 14, 1996.  A.R. 3310-11.  The purpose of the "Certificate of Possession" appears to have been to describe in basic terms the title to a one-hundred and forty-eight (148) acre tract held by Dr. Henry W. Toll, Jr., and to certify that no use or occupancy of the tract by any other person placed Dr. Toll's title in question as of November 14, 1996.  A.R. 3310-11.  What connection this document may have to any assessment of Plaintiff's state or common law easement rights remains a complete mystery, as it is not explained in either the Administrative Record or Defendants' Response [#99].  The Court finds that the "Certificate of Possession" does not establish that USFS complied with 36 C.F.R. § 251.114(f)(1) when considering Plaintiff's Application.

16

Because Defendants have not pointed to any other evidence in the Administrative Record indicating that USFS considered *during its administrative review* of Plaintiff's Application whether Plaintiff had "any existing rights or routes of access available by deed or under State or common law," the Court cannot find that USFS complied with 36 C.F.R. § 251.114(f)(1).[6] Failure to comply with the regulation is a violation of the APA. *Sierra Club v. Van Antwerp*, 526 F.3d at 1368 ("[A]n agency's failure to follow its own regulations and procedures is arbitrary and capricious."); *Skranak*, 425 F.3d at 1221 (holding that the Forest Service's failure to follow 36 C.F.R. § 251.114(f)(1) violated the APA).

Defendants' Response [#99] may be liberally read to suggest that any error made by USFS in failing to comply with the regulation was harmless. *See Bar MK Ranches*, 994 F.2d at 740 ("The harmless error rule applies to judicial review of administrative proceedings, and errors in such administrative proceedings will not require reversal unless [p]laintiffs can show they were prejudiced."); *Gibson v. Glickman*, 15 F. App'x 749, 750 (10th Cir. 2001) ("We must take 'due account . . . of the rule of prejudicial error.' 5 U.S.C. § 706(2). This court has equated the rule of prejudicial error with harmless error review." (citing *Bar MK Ranches*, 994 F.2d at 740)). Defendants' contention appears to be a corollary of the notion that USFS is allowed to interpret its own regulations, and choosing

---

[6] The Court notes that the Administrative Record does contain a letter from an attorney at the United States Office of the General Counsel, Department of Agriculture, which addresses the question of "whether [USFS] gave proper consideration to the issue of whether [Plaintiff] has a 'common law' easement by necessity that accesses his mining claim–the May Queen Lode." A.R. 350. This letter is dated October 4, 2007, nearly five months after USFS issued its Decision Memo [#37-1] granting Plaintiff two FLPMA Easements. Accordingly, the letter is not evidence that USFS actually considered *during its administrative review* of Plaintiff's Application whether Plaintiff had any existing rights or routes of access available by deed or under state or common law. *See Babbitt*, 998 F.2d at 882 ("Judicial review . . . is generally based on the administrative record that was before the agency at the time of its decision[.]"). Moreover, the letter's conclusion that an easement by necessity is precluded by operation of law sounds like an after-the-fact justification for USFS's failure to consider whether Plaintiff has one.

to ignore a regulation is a valid interpretation of it.  However, precedent clearly establishes that USFS's failure to consider a landowner's common law or state law access rights is not acceptable, because such rights may in fact determine whether certain conditions of a special use permit are reasonable, or whether the permit is even "legitimately . . . require[d]."  *Fitzgerald*, 460 F.3d at 1264; *id.* ("[A] determination of common law rights is relevant to the determination of the reasonableness of the FLPMA easements."); *see also Jenks II*, 129 F.3d at 1351 ("[T]he permit process expressly require[s] a determination of [a permit applicant]'s patent and common law rights of access."); *Jenks I*, 22 F.3d at 1518 ("[A]ny deed or common law access rights a landowner possesses may affect the terms of the permit[.]").  Accordingly, the Court recommends that (1) the Decision Memo [#37-1] regarding Plaintiff's Application should be set aside, and (2) Plaintiff's Application should be remanded to USFS for proper consideration in accordance with 36 C.F.R. § 251.114(f)(1).  *See* 5 U.S.C. § 706(2)(D); *Olenhouse*, 42 F.3d at 1575 (When an agency's decisionmaking violates the APA, "the reviewing court may . . . remand the case to the agency for further proceedings." (citations omitted)); *Big Horn Coal Co.*, 793 F.2d at 1169 ("Agencies are under an obligation to follow their own regulations, procedures, and precedents[.]" (internal quotation omitted)); *Skranak*, 425 F.3d at 1221 ("We conclude that the Forest Service must be held to 36 C.F.R. § 251.114(f)'s requirement that an easement determination be made.").

### (iii) Plaintiff's Responsibilities Pursuant to the FLPMA Easements

Plaintiff argues that the two FLPMA Easements [#37-2] granted on May 14, 2007 contain "a multitude of rules, regulations, restrictions, and limitations" that effectively render them unusable.  *Second Amended Complaint* [#51] at 8.  Plaintiff states that he "could not possibly comply" with all of the requirements set out in the Easements.  *Id.*  He therefore

argues that the decision to grant him such heavily-conditioned Easements was "tantamount to a denial" of his Application.  *Id.; Brief* [#94] at 5 ("The Forest Service knows full well that no person could ever comply with the requirements set forth [in the Decision Memo].  The cost of compliance would be prohibitive.").  Plaintiff specifically complains about the requirement that he build "a bridge with a gate across the South Fork of Middle Boulder Creek," *Notification* [#37] at 5, because the cost of compliance "will far exceed the market value of [his property]."  *Second Amended Complaint* [#51] at 8.  Finally, Plaintiff argues that USFS's decision to place such onerous conditions on his use of the two FLPMA Easements was "vindictively motivated [and] done with the intent of preventing [him] from using and enjoying his property."  *Id.*; *see Brief* [#94] at 5.  Plaintiff asserts that the conditions placed on his right of access should be set aside because they are "arbitrary and capricious."  *Id.* at 8.

Because the Court has already recommended that the Decision Memo [#37-1] granting Plaintiff the two FLPMA Easements [#37-2] be set aside, *see* Part II.B(ii), *supra*, there is no need to consider whether the terms and conditions contained in the Easements are arbitrary, capricious, or unreasonable.  On remand, USFS must reconsider Plaintiff's Application and make a new determination regarding the terms and conditions of any special use authorization or easement that it may grant.

### III.  Conclusion

For the foregoing reasons, I respectfully **RECOMMEND** that Plaintiff's claim under 28 U.S.C. § 2409a seeking to quiet his alleged title to an easement allowing access to the May Queen Lode be **DISMISSED with prejudice**.

I FURTHER **RECOMMEND** that judgment be entered in favor of Plaintiff on his claim under 5 U.S.C. § 706 that USFS failed to comply with 36 C.F.R. § 251.114(f)(1). Accordingly,

I FURTHER **RECOMMEND** that (1) the Decision Memo [#37-1] granting Plaintiff two FLPMA Easements [#37-2] be set aside, and (2) Plaintiff's Application be remanded to USFS for reconsideration.

IT IS **ORDERED** that pursuant to Fed. R. Civ. P. 72, the parties shall have fourteen (14) days after service of this Recommendation to serve and file any written objections in order to obtain reconsideration by the District Judge to whom this case is assigned.  A party's failure to serve and file specific, written objections waives de novo review of the Recommendation by the District Judge, Fed. R. Civ. P.  72(b); *Thomas v. Arn*, 474 U.S. 140, 147-48 (1985), and also waives appellate review of both factual and legal questions. *Makin v. Colo. Dep't of Corr.*, 183 F.3d 1205, 1210 (10th Cir. 1999); *Talley v. Hesse*, 91 F.3d 1411, 1412-13 (10th Cir. 1996).  A party's objections to this Recommendation must be both timely and specific to preserve an issue for de novo review by the District Court or for appellate review.  *United States v. One Parcel of Real Prop.*, 73 F.3d 1057, 1060 (10th Cir. 1996).

Dated:  December 8, 2010

BY THE COURT:

 s/ Kristen L.  Mix
Kristen L.  Mix
United States Magistrate Judge

20