IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Senior Judge Zita Leeson Weinshienk

Civil Action No. 04-cv-01382-ZLW-KLM

KENNETH E. PEPER,

      Plaintiff,

v.

DEPARTMENT OF AGRICULTURE OF THE UNITED STATES OF AMERICA;
THOMAS J. VILSACK, Secretary in his official capacity;
FOREST SERVICE OF THE UNITED STATES OF AMERICA; and
THOMAS J. TIDWELL, as Chief in his official capacity,

      Defendants.

_____

ORDER
_____

The matter before the Court is resolution of Plaintiff's Second Amended

Complaint (Doc. No. 51).  Pursuant to this Court's order dated November 5, 2009 (Doc.

No. 109), the Second Amended Complaint was referred to Magistrate Judge Kristen L.

Mix for purposes of issuing a Recommendation on all of Plaintiff's claims.[1]  On

December 8, 2010, Magistrate Judge Mix issued her Recommendation (Doc. No. 116)

that the quiet title claim be dismissed, that judgment be entered in favor of Plaintiff on

his Administrative Procedure Act (APA)[2] claim, and that the Plaintiff's special-use

---

[1] *See* D.C.COLO.LCivR 72.1C.3.; 28 U.S.C. § 636(b)(1)(B)-(C); Fed. R. Civ. P. 72(b).

[2] 5 U.S.C. §§ 701-706.

Application for Transportation and Utility Systems and Facilities on Federal Lands (Application) be remanded to the United States Forest Service (USFS) for reconsideration.

Both parties timely filed objections to the Recommendation,[3] and Defendants filed a response on February 7, 2011.[4] Plaintiff's pleadings and objection have been liberally construed because he is *pro se.*[5]

As required by 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72(b)(3), the Court has reviewed *de novo* the portions of the Recommendations to which the parties objected. The Court overrules Plaintiff's objection and sustains Defendants' objection. Accordingly, the Court adopts the Magistrate Judge's Recommendation in part and rejects it in part, and the Court ultimately concludes that all claims in the Second Amended Complaint should be dismissed with prejudice.

## SUMMARY[6]

Plaintiff is the owner of a patented mining claim known as the May Queen Lode that is surrounded by the Arapaho and Roosevelt National Forests.[7] On November 12,

---

[3]Pl.'s Objectives [sic] To Recommendation (Doc. No. 121; Jan. 20, 2011); Defs.' Objection To Recommendation (Doc. No. 122; Jan. 21, 2011).

[4]Doc. No. 124 (Feb. 7, 2011).

[5]*See* Trackwell v. United States, 472 F.3d 1242, 1243 (10th Cir. 2007). However, the Court is not required to act as the *pro se* litigant's advocate. *See* Hall v. Bellmon, 935 F.2d 1106, 1110 (10th Cir. 1991).

[6]The summary is adapted from the Magistrate Judge's Recommendation at 2-6.

[7]Second Am. Complaint (Doc. No. 51; Oct. 22, 2007); Answer (Doc. No. 63; Feb. 25, 2008).

2001, Plaintiff submitted his Application to the USFS pursuant to 36 C.F.R. § 251.54.[8]

Plaintiff's Application requested a "formalize[d] . . . easement" granting him access

across National Forest land to reach the May Queen Lode.[9]

On January 29, 2002, USFS "notified [Plaintiff] that his [Application] would be

formally accepted as an application for special use authorization once he formed a

Home or Landowners Association (HOA) and resubmitted a modified application."[10]  On

April 28, 2003, Plaintiff informed USFS that he had formed a HOA, the Middle Boulder

Creek Road Association.[11]  On June 18, 2003, USFS informed Plaintiff that "due to

staffing issues and the backlog on special use permits and easements, he could expect

to receive the special use authorization in two to four years."[12]

Plaintiff was dissatisfied with the speed of USFS's handling of his Application,

and on July 7, 2004 he filed a Complaint in which he asserted a quiet title action

pursuant to 28 U.S.C. § 2409a to secure his alleged title to an easement allowing

access to the May Queen Lode.[13]  Plaintiff alleged three "alternate sources" of his

title to an easement: (1) the common law theory of easement by necessity; (2) "Revised

---

[8]Administrative Record (AR) 00004-00010.

[9]AR 00003.

[10]AR 00011-00012.

[11]AR 00032-00033.

[12]AR 00034.

[13]Complaint (Doc. No. 1; July 7, 2004).

Statute 2477" (RS 2477); and (3) the Alaska National Interest Land Conservation Act (ANILCA), 16 U.S.C. § 3210.[14]

On October 7, 2004, Defendants filed a motion to dismiss.[15]  On September 5, 2006, the Court granted the motion to dismiss in part and dismissed with prejudice Plaintiff's RS 2477 and easement by necessity claims.[16]  The Court did not dismiss Plaintiff's claim that he was entitled to an easement under ANILCA.[17]  The Court also ordered that "Defendants shall complete and conclude the administrative process concerning Plaintiff's [Application] for a special use authorization" by May 15, 2007.[18]

On May 15, 2007, Defendants filed notification that the administrative process was complete and requested the remaining ANILCA claim be dismissed.[19]  Defendants explained:

> On May 8, 2007, Forest Supervisor Glenn P. Casamassa signed a Decision Memo approving the issuance of special use authorizations to the Middle Boulder Creek Road Association authorizing access to privately owned property (the "Property"). Access to the Property will be via two Forest Land Policy and Management Act ("FLPMA") [43 U.S.C. §§ 1701-82] easements: (1) a Forest Road Easement; and (2) a Private Road Easement (the "Easements")[.] . . .

---

[14]Id. at 2-3.

[15]Doc. No. 6 (Oct. 7, 2004).

[16]Order (Doc. No. 28; Sep. 5, 2006).

[17]Id.

[18]Id.; Order (Doc. No. 35; Dec. 7, 2006).

[19]Doc. No. 37.

> Prior to any motorized use of the Private Road Easement, construction of an armored ford across the North Fork of Middle Boulder Creek, construction of a bridge with a gate across the South Fork of Middle Boulder Creek, and construction/reconstruction of the road [is required]. All construction/reconstruction and maintenance shall be the responsibility of the holder of the Easements. The Easements will allow for motorized access to the Property, except during the winter months.
>
> On May 14, 2007, the Forest Service sent [Plaintiff] a cover letter and two separate FLPMA easement packages for his signature. Once [Plaintiff] has submitted the executed easement documents along with his payment of the land use fees associated with the Easements, $241.08 for 2007, the Forest Supervisor for the Arapaho and Roosevelt National Forests and Pawnee National Grassland will authorize his use of the Easements.[20]

Because the USFS completed its administrative process in compliance with the Court's Orders, and because Plaintiff was granted two FLPMA Easements, the Court granted Defendants' request that the ANILCA claim be dismissed.[21]  However, the Court also ordered that Plaintiff could file an Amended Complaint setting forth a claim for review of the agency decision under the Administrative Procedure Act (APA), 5 U.S.C. §§ 701-706, "which shall then be the only claim at issue in this case."[22]  Plaintiff subsequently filed his Second Amended Complaint, which is now before the Court.

---

[20]Id. at 5-6.; AR 00319.

[21]Order (Doc. No. 47; July 20, 2007).

[22]Id. at 2.

Plaintiff's Second Amended Complaint asserts two claims: (1) a claim under 28 U.S.C. § 2409a seeking to quiet Plaintiff's alleged title to an easement allowing access to the May Queen Lode; and (2) a claim under the APA (5 U.S.C. § 706) seeking remand of the USFS's decision to grant Plaintiff two FLPMA Easements.  The Magistrate Judge recommended dismissing the former claim and remanding to the USFS for further administrative review on the latter claim.  Both parties objected to the portions of the Recommendation that were adverse to their positions.

## PLAINTIFF'S OBJECTION

Plaintiff objects that the Magistrate Judge erred by failing to reconsider the merits of his Quiet Title Act[23] claim included in his Second Amended Complaint.  As noted by this Court in an August 6, 2008 Order, "**further argument regarding either a quiet title action or existence of an easement will not be permitted.  These matters have been resolved and are no longer the subject of this case.**"[24]

Accordingly, Plaintiff's objection is overruled.  Plaintiff's attempts to revive his quiet title action is inappropriate pursuant to the "law of the case" doctrine.[25]  The Court

---

[23]28 U.S.C. § 2409a.

[24]Order (Doc. No. 101; Aug. 6, 2008) (emphasis in original). *See also* Doc. Nos. 28 (Sep. 28, 2006), 30 (Sep. 20, 2006), 47 (Jul. 20, 2007), 59 (Feb. 14, 2008), 75 (Apr. 24, 2008), and 95 (July 3, 2008).

[25]Been v. O.K. Industries, Inc., 495 F.3d 1217, 1224 (10th Cir. 2007) ("'[L]aw of the case' doctrine dictates that prior judicial decisions on rules of law govern the same issues in subsequent phases of the same case."). To the extent Plaintiff has added new theories of relief to his quiet title claim, he has not been granted leave to assert these new theories. *See* Fed. R. Civ. P. 15(a)(2).

accepts and adopts the Magistrate Judge's Recommendation that Plaintiff's Quiet Title

Act claim be dismissed with prejudice.

**DEFENDANTS' OBJECTION**

Defendants object that the Magistrate Judge erred by determining that the United

States Forest Service failed to comply with its internal regulations when processing the

Application.  Specifically, the Magistrate Judge determined that the USFS failed to

determine during its administrative review whether Plaintiff had "any existing rights or

routes of access available by deed or under State or common law."[26]

The criteria for the issuance of a special use authorization for access across

National Forest lands is governed by 36 C.F.R. § 251.114(f).  Subsection (f)(1) provides

that "the authorizing officer, prior to issuing any access authorization, must also

ensure . . . the landowner has demonstrated a lack of any existing rights or routes of

access available by deed under State or common law[.]"[27]

---

[26]Recommendation at 17.

[27]28 C.F.R. § 251.114(f).

The Magistrate Judge found that compliance with this regulation is mandatory,[28] and failure to comply is a violation of the APA.[29]  For purposes of this Order, the Court accepts and adopts these legal conclusions.[30]

Further, the Magistrate Judge concluded that Defendants provided no evidence in the Administrative Record indicating that the USFS considered pre-existing access during the administrative review of the Application.  However, it is clear that to the extent that review of pre-existing rights and routes of access is necessary under subsection (f)(1), that review occurred since Plaintiff filed the present lawsuit *specifically to address his claims of pre-existing access.*[31]

Plaintiff initially filed his Application in 2001.[32]  As a result of his dissatisfaction of the speed the USFS was processing his Application, Plaintiff filed this case in July 2004.[33]  Plaintiff's original Complaint alleged that he had an easement by necessity to

---

[28]Recommendation at 13; United States v. Jenks, 22 F.3d 1513, 1518 (10th Cir. 1994) (Jenks I); Skranak v. Castenada, 425 F.3d 1213, 1219 (9th Cir. 2005).

[29]Recommendation at 14; United States v. Jenks, 129 F.3d 1348, 1351 (10th Cir. 1997) (Jenks II); Skranak, 425 F.3d at 1221; 5 U.S.C. § 706(2)(D).

[30]The USFS argues that subsection (f)(1) does not "require the [USFS] to determine the validity of an applicant's property interests in any purported easements against Forest Service lands as a precondition to issuing a special use permit authorizing access." Resp. To P.'s Opening Brief (Doc. No. 99; July 23, 2008), at 57.  However, the United States Court of Appeals for the Tenth Circuit has questioned the validity of this position, at least in *dicta. See* Id. at 57 n.25; Jenks I, 22 F.3d at 1518. Further, the United States Court of Appeals for the Ninth Circuit has rejected this interpretation. Skranak, 425 F.3d at 1219-1221.

[31]Thus, to the extent Defendants argue that it was Plaintiff's burden of proof to demonstrate lack of access, *see* Defs.' Objection at 2-4, this objection is overruled.

[32]AR 00004-00010.

[33]Complaint (Doc. No. 1; July 7, 2004).

Case 1:04-cv-01382-ZLW-KLM   Document 125   Filed 03/31/11   USDC Colorado   Page 9 of 18

access his mining claim.[34]  The USFS spent several years arguing the existence of an easement before this Court dismissed the claim in September 2006.[35]  The USFS subsequently issued two FLPMA Easements in May 2007.[36]

Since the USFS has been a Defendant in this case from the beginning, all events that took place in this case must be considered part of the administrative record.[37]  Thus, discussion of the existence of pre-existing access occurred *within this case* during the administrative review of Plaintiff's Application.  Whatever the level of review necessary under subsection (f), this Court concludes that the USFS, through the lengthy litigation that has occurred in this case, has met its burden under subsection (f)(1).

Therefore, Defendants' objection is sustained, and this Court declines to adopt the portion of the Recommendation holding that the USFS failed to comply with 36 C.F.R. § 251.114(f)(1).

---

[34]Id. at 2.  Plaintiff's original Complaint also claimed he had rights in the access road pursuant to Revised Statue 2477 (R.S. 2477).  Id. at 3.  However, this claim was based entirely on land rights controlled by a Federal statutory scheme and, therefore, is not relevant for purposes of analyzing subsection (f)(1). *See* § 251.114(f)(1) (requiring analysis only of *State* or *common law* property rights).  To the extent that Plaintiff argues that the USFS should have addressed other easement theories that he has raised in his Second Amended Complaint, these theories were not before the agency during the administrative review and are therefore waived. *See, e.g.,* Citizens for Alternatives to Radioactive Dumping v. U.S. Dept. of Energy, 485 F.3d 1091, 1096 (10th Cir. 2007).

[35]Order (Doc. No. 28; Sep. 26, 2006).

[36]AR 00071-00108, 00319-00329.

[37]The entire Court record for this case through May 2007, the date the FLPMA Easements were issued, appears in the Administrative Record. AR 02636-02905.  Additionally, discovery requests initiated in this case also appear in the Record. AR 03169-03364.

## APA REVIEW OF EASEMENT CONDITIONS

Because the Magistrate Judge recommended that the issuance of the FLPMA Easements be set aside, she did not consider whether the terms and conditions contained in those easements were arbitrary, capricious, or unreasonable in violation of the APA.  This Court must now perform this analysis.

### Standard of Review

The purpose of a claim under the APA is to allow a person suffering legal wrong because of an agency's decision to obtain judicial review of that decision.[38]  When reviewing an agency's decision, the Court shall "hold unlawful and set aside" the decision or any agency findings or conclusions that are "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law."[39]

"The duty of a court reviewing [an] agency [decision] under the 'arbitrary or capricious' standard is to ascertain whether the agency examined the relevant data and articulated a rational connection between the facts found and the decision made."[40]  The Court must look to the agency's explanation for its decision and determine whether the agency considered all of "the relevant factors and whether there has been a clear error

---

[38]5 U.S.C. § 702.

[39]5 U.S.C. § 706(2)(A).

[40]Olenhouse v. Commodity Credit Corp., 42 F.3d 1560, 1573 (10th Cir. 1994) (*citing* Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Ins. Co., 463 U.S. 29, 43 (1983)).

of judgment."[41]   An agency's decision will be set aside as arbitrary or capricious "if the

agency relied on factors which Congress ha[d] not intended for it to consider, entirely

failed to consider an important aspect of the problem, offered an explanation for its

decision that runs counter to the evidence before the agency, or is so implausible that it

could not be ascribed to a difference in view or the product of agency expertise."[42]   This

inquiry is meant to be "searching and careful," but "the ultimate standard of review is a

narrow one."[43]   The Court "is not empowered to substitute its judgment for that of the

agency."[44]

       "Because the arbitrary and capricious standard focuses on the rationality of an

agency's decisionmaking process rather than on the rationality of the actual decision,

'[i]t is well-established that an agency's [decision] must be upheld, if at all, on the basis

articulated by the agency itself.'"[45]   The Court looks only to the agency's explanation of

its course of inquiry, its analysis, and its reasoning that is contained in the administrative

record.[46]

---

[41]Citizens to Preserve Overton Park, Inc. v. Volpe, 401 U.S. 402, 416 (1971).

[42]Motor Vehicle Mfrs., 463 U.S. at 43.

[43]Overton Park, 401 U.S. at 416.

[44]Id.; see also Utahns for Better Transp. v. United States Dep't of Transp., 305 F.3d 1152, 1164 (10th Cir. 2002) (citing Fund for Animals, Inc. v. Rice, 85 F.3d 535, 541 (11th Cir. 1996)) (standard is deferential; "administrative determinations may be set aside only for substantial procedural or substantive reasons.").

[45]Olenhouse, 42 F.3d at 1575 (quoting Motor Vehicle Mfrs., 463 U.S. at 43).

[46]Olenhouse, 42 F.3d at 1575.

**Analysis**

The Court has reviewed Plaintiff's Second Amended Complaint, the briefs filed by the parties, and the Administrative Record.  The Court has determined that the conditions contained in the FLPMA Easements are not arbitrary, capricious, or an abuse of discretion.

Under ANILCA, a statutory right of access exists to "nonfederally owned land within the boundaries of the National Forest System."[47]  The USFS must "provide for the reasonable use and enjoyment" of these inholdings.[48]  Determining reasonable use and enjoyment of the inholding is determined by looking at "contemporaneous uses made of similarly situated lands in the area and any other relevant criteria."[49]

However, this access is "subject to such terms and conditions as the Secretary of Agriculture may provide" and the non-federal owner must "comply with the rules and regulations applicable to ingress and egress to or from the National Forest System."[50]

To obtain access under ANILCA, the USFS requires a landowner to file a "special use" application.[51]  The rights-of-way issued from a special use application are controlled by FLPMA and require "terms and conditions which will . . . minimize damage

---

[47]16 U.S.C. § 3210(a).

[48]Id.

[49]36 C.F.R. § 251.114(a).

[50]Id.; Jenks I, 22 F.3d at 1518-19; *see also* Adams v. United States, 255 F.3d 787, 795 (9th Cir. 2001).

[51]36 C.F.R § 251.50(a); 36 C.F.R. § 251.110(d).

to scenic and esthetic values and fish and wildlife habitat and otherwise protect the

environment . . . ."[52]

In addition to examining pre-existing rights of access,[53] the USFS must also

ensure that

> [t]he route is so located and constructed as to minimize
> adverse impacts on soils, fish and wildlife, scenic, cultural,
> threatened and endangered species, and other values of the
> Federal land; [and]
> [t]he location and method of access is as consistent as
> reasonably possible with the management of any
> congressionally designated area and is consistent with Forest
> Land and Resource Management Plans or the plans are
> amended to accommodate the access grant.[54]

Finally, the landowner must pay a yearly fee for use of the special use permit[55]

and is required to provide for construction/reconstruction and maintenance of any roads

used to access the inholdings.[56]

A cursory review of the Easements' terms indicate that Plaintiff obtained exactly

what he applied for: vehicular access to his property.  The Court notes that Plaintiff's

mining claim is located close to an existing wilderness area in a region managed

---

[52]43 U.S.C. § 1765; 36 C.F.R. § 251.56(a)(1).

[53]36 C.F.R. § 251.114(f)(1).

[54]36 C.F.R. § 251.114(f)(2)-(3).

[55]36 C.F.R. § 251.114(b).

[56]36 C.F.R. § 251.114(d)-(e).

primarily for recreational purposes.[57]  The FLPMA easements would allow vehicular travel over existing USFS trails in an area where motorized access is not allowed.[58] The single public comment received urged denial of the permit.[59]  The USFS determined that issuing the easements would result to an "adverse effect" to historic properties located in the Lost Lake Mining Camp historic district.[60]  Finally, the Easements conflict with the long-range forest plan of maintaining or increasing habitat in old growth areas.[61]

Despite these issues, Plaintiff was still granted access to his land, demonstrating to the Court that the USFS satisfactorily performed its duty of balancing its various regulatory requirements with Plaintiff's statutory right of access to his land.

Ultimately, it is Plaintiff's burden to demonstrate that the terms of his FLPMA Easements are unreasonable.[62]  Plaintiff has failed to do so.  The Court briefly addresses some of Plaintiff's arguments below.

---

[57]AR 00159-00160.

[58]Id.; AR 00324, 00327 (project deviates from Forest Plan of "[d]o not construct new roads.").

[59]AR 00117-00118.

[60]AR 00057-00058.

[61]AR 00327.

[62]Sierra Club v. Lujan, 949 F.2d 362, 369 (10th Cir. 1991).

### 1. Termination of Easements

Plaintiff argues that the termination provisions in the easements give the USFS

unlimited discretion.  Termination provisions are an acceptable, if not required,

component of FLPMA easements and the Court does not find the easement restrictions

in this case to be arbitrary and capricious.[63]

### 2. Bridge

Plaintiff argues that the specifications for the new bridge required by the USFS to

cross the South Fork of Middle Boulder Creek are unreasonable and the new bridge is

too expensive.  The Court finds that the specifications are reasonable and consistent

with bridge standards required for Forest System lands.[64]  The Court notes that

requiring a safe and well-constructed bridge is important here as it will be built in close

proximity to trails heavily used for recreational activities, so the USFS has an even

greater responsibility to ensure the bridge is built to adequate specifications.

Additionally, the Court notes that Plaintiff had an opportunity to provide input on

the bridge design during the administrative review, but he declined to do so.[65]

---

[63]43 U.S.C. § 1764(b) (USFS required to limit grants of rights-of-way "to a reasonable term in light of all circumstances concerning the project").

[64]*See, e.g.*, AR 00100-00108, 01621-01625.

[65]AR 00049-00050.

### 3. Middle Boulder Creek Road Association

Plaintiff objects to the USFS treatment of the "Middle Boulder Creek Road Association, a Colorado non-profit corporation" (Road Association) as the applicant for the FLPMA Easements and instead demands that the easements must be issued in his name.  The Road Association was formed in response to the USFS informing Plaintiff that special-use applications from a road association would speed processing of the application.[66]  The USFS did not act arbitrarily and capriciously in issuing the FLPMA Easements to the Road Association as this was the entity that formally requested the easements, not Plaintiff.

### 4. Year Round Access/Snow Removal

Plaintiff objects that the FLPMA Easements do not provide for year-round access, including during periods when snow removal is necessary.  During the administrative review, the USFS asked Plaintiff what his plans were for year-round access.[67]  Plaintiff responded that he planned for year round access, but "I do not plan to seek special snow removal."[68]  Due to this response, the USFS "did not recognize a need to remove snow from NFS land if snow were not being removed from the County

---

[66]AR 00034.

[67]AR 03072-03073.

[68]AR 03074.

16

Road."[69]  The Court agrees that due to Plaintiff's representation, the USFS was under

no obligation to perform the necessary FLPMA environmental analyses for winter

access, let alone provide for winter access in the easements.[70]

### 5. Annual Easements Fee

Finally, Plaintiff argues that he should not have to pay a fee to access his

property since he has never had to do this before.  However, it is clear that the USFS is

authorized to exact an annual fee for easements issued under FLPMA.[71]  The Court

finds that a $200-300 usage fee per year for the FLPMA Easements is more than

reasonable, especially in light of the vast resources that were expended during the

administrative review process to perform the necessary environmental analyses

required by FLPMA.

In conclusion, the Court finds that the terms of the FLPMA Easements are not

arbitrary or capricious.  Therefore, judgment must be entered in favor of Defendants on

Plaintiff's APA claim.

---

[69]AR 00324.

[70]The Court notes that Plaintiff does not require winter access in the easement to travel to his property via non-vehicular means.

[71]43 U.S.C. § 1746(a); Beaver, Bountiful, Enterprise v. Andrus, 637 F.2d 749 (10th Cir. 1980); 36 C.F.R. § 251.57; 36 C.F.R. § 251.114(b).

**ORDER**

Accordingly, it is

ORDERED that Plaintiff's objection (Doc. No. 121; Jan. 20, 2011) is overruled.  It is

FURTHER ORDERED that Defendants' objection (Doc. No. 122; Jan. 21, 2011) is sustained.  It is

FURTHER ORDERED that the Magistrate Judge's Recommendation (Doc. No. 116; Dec. 8, 2010) is adopted in part as described in this order.  It is

FURTHER ORDERED that the Quiet Title Act claim is dismissed with prejudice pursuant to the law of the case doctrine.  It is

FURTHER ORDERED that judgment be entered in favor of Defendants on the Administrative Procedure Act claim.  It is

FURTHER ORDERED that the Second Amended Complaint and cause of action are dismissed with prejudice.  It is

FURTHER ORDERED that the parties shall pay their own costs.

DATED at Denver, Colorado, this 30th day of March, 2011.

BY THE COURT:

_____
ZITA LEESON WEINSHIENK, Senior Judge
United States District Court